FILED
 2021 Jun-15 PM 03:34
U.S. DISTRICT COURT
  N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **JENNIFER MEDDERS,** | } |
| Plaintiff, | } |
| v. | } Case No.: 4:20-cv-00611-ACA |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** | } |
| Defendant. | } |

## MEMORANDUM OPINION

Plaintiff Jennifer Medders appeals the decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

### I.   PROCEDURAL HISTORY

In June 2016, Ms. Medders applied for a period of disability and disability insurance benefits alleging that her disability began on October 26, 2015. (R. at 180–81). The Commissioner initially denied Ms. Medders' claim (*id.* at 104–09), and she requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 112–15). The ALJ conducted a hearing (r. at 35–69) and issued an unfavorable

decision (*id.* at 14–34). The Appeals Council denied Ms. Medders' request for review (*id.* at 1), making the Commissioner's decision final and ripe for the court's judicial review, 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks

omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.  ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ found that Ms. Medders has not engaged in substantial gainful activity since October 26, 2015, the alleged onset date. (R. at 19). The ALJ found that Ms. Medders' back degenerative disc disease, mild right hand carpel tunnel syndrome, DeQuervain's tenosynovitis, depression, and bipolar and trauma stressor disorders are severe impairments. (*Id.*). But the ALJ found that Ms. Medders' hypertension, parasitic disorder, chronic pain, abdominal pain, cholestectomy, chronic anemia, urinary retention, anorexia, hyponatremia, bilateral plantar fasciitis, and Achilles tendon contracture are non-severe impairments. (*Id.* at 19–20). The

ALJ then concluded that Ms. Medders does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 20).

After considering the evidence of record, the ALJ determined that Ms. Medders has the residual functional capacity to perform light work with certain exertional and non-exertional limitations. (R. at 22). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that Ms. Medders is capable of performing her past relevant work as a day worker and that other jobs exist in the national economy that Ms. Medders can perform, including office helper and routing clerk. (*Id.* at 28). Accordingly, the ALJ determined that Ms. Medders has not been under a disability, as defined in the Social Security Act, from October 26, 2015, through the date of the decision. (*Id.*).

## IV. DISCUSSION

Ms. Medders asks the court to reverse the Commissioner's decision for three reasons: (1) the ALJ did not give proper weight to the opinion of treating physician Dr. Jane Teschner; (2) the ALJ did not properly evaluate the opinion of consulting psychologist Dr. June Nichols; and (3) the ALJ's finding that Ms. Medders can perform her past work is not supported by substantial evidence and is not consistent

with proper legal standards. (Doc. 11 at 20–30).[1] The court considers each argument in turn.

    1.    <u>The ALJ Properly Evaluated Dr. Teschner's Opinion</u>

Ms. Medders' first argument is that the ALJ did not give proper weight to the opinion of her treating physician, Dr. Teschner. (Doc. 11 at 20–23).

An ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks and citation omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41. "With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241; alteration in *Winschel*).

In 2018, Dr. Teschner completed a physical capacities form in support of Ms. Medders' disability application. (R. at 801). Dr. Teschner opined that Ms. Medders

---

[1] Ms. Medders' brief contains a heading for a fourth issue—that the ALJ's decision was not based on substantial evidence. (Doc. 11 at 30). The entirety of Ms. Medders' argument on this issue is that the ALJ improperly rejected the treating physician's opinion and the opinion of the Commissioner's psychologist. These issues are identical to Ms. Medders' first and second arguments.

can sit and stand for one to two hours at a time. (*Id.*). Dr. Teschner also opined that in an 8-hour workday, Ms. Medders must lie down, sleep, or sit with her legs propped at waist level or above for three hours and would be off task 30% of the time. (*Id.*). Dr. Teschner explained that Ms. Medders would miss three to four days of work a month due to her medical conditions. (R. at 801).

In 2019, Dr. Teschner completed a mental health source statement on behalf of Ms. Medders. (R. at 953). Among other opinions, Dr. Teschner concluded that Ms. Medders cannot perform activities within a schedule or be punctual with customary tolerances. (*Id.*). Dr. Teschner also opined that Ms. Medders cannot sustain an ordinary routine without special supervision. (*Id.*). According to Dr. Teschner, Ms. Medders cannot interact with supervisors or co-workers, and Ms. Medders' psychological symptoms would cause her to be off task 40% of a normal workday and miss more than five days of work per month. (R. at 953).

The ALJ gave "very little weight" to Dr. Teschner's opinion because the ALJ found that the opinions were inconsistent with Dr. Teschner's treatment and findings as well as other medical evidence in the record. (*Id.* at 25–26).

Good cause existed for discounting Dr. Teschner's opinions because as the ALJ explained, Dr. Teschner's opinions are not consistent with some of her own treatment records and other medical evidence. For example, the ALJ explained that between 2016 and 2018, Ms. Medders sought treatment for a variety of conditions

and although she had some positive findings, a number of examinations were within normal limits, showed that medication adequately controlled her pain, and revealed no significant depressive symptoms. (R. at 23–25) (citing *id.* at 662–663, 667–68, 682–84, 769, 796–99, 863). Accordingly, the ALJ's decision to give little wight to Dr. Teschner's opinion is supported by substantial evidence. *See Crawford*, 363 F.3d at 1159-61 (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those physicians' opinions regarding the claimant's disability were inconsistent with the physicians' treatment notes and unsupported by the medical evidence).

Ms. Medders argues that other evidence in the record supports Dr. Teschner's opinions. (Doc. 11 at 23). But the court cannot "second guess the ALJ about the weight assigned the treating physician's opinion deserves so long as he articulates a special justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015). Here, the ALJ articulated good cause for giving little weight to Dr. Teschner's opinions, and the court will not disturb that finding.

2. The ALJ Properly Evaluated Dr. Storjohann's Opinion

Ms. Medders' second argument is that the ALJ failed to give proper weight to the opinion of examining psychologist Dr. Nichols. (Doc. 22 at 29–34).

The opinion of a one-time examiner like Dr. Nichols is not entitled to deference. *Crawford*, 363 F.3d at 1160 (the opinion of a one-time examining

7

physician is "not entitled to great weight") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). In addition, "[t]he ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

In 2017, Dr. Nichols conducted a consultative mental examination of Ms. Medders. (R. at 791–94). Dr. Nichols opined that Ms. Medders' mental impairments impact her ability to respond appropriately to supervision, coworkers, and work pressures. (*Id.* at 794). Dr. Nichols also explained that Ms. Medders has deficits with attention and concentration which "would interfere with her ability to remember, understand, and carry out work related instructions." (*Id.*).

The ALJ gave partial weight to this opinion because he found that according to the medical evidence, Ms. Medders would have only some limitations due to her mental impairments. (R. at 25). Citing *McClurkin v. SSA*, 625 F. App'x 960 (11th Cir. 2015), Ms. Medders argues that the ALJ "failed to state with at least 'some measure of clarity' the grounds for his decision in repudiating the opinion of an examining physician." (Doc. 11 at 24). As an initial matter, the ALJ noted that the medical evidence supported Dr. Nichols' conclusion that Ms. Medders has limitations because of her mental conditions. (R. at 25). And contrary to Ms. Medders' position, the ALJ accounted for a number of the limitations Dr. Nichols

identified when determining Ms. Medders' residual functional capacity. For example, the ALJ limited Ms. Medders to semi-skilled work which requires understanding, remembering, and carrying out some detailed skills but does not require more complex work duties. (*Id.* at 22). The ALJ also found that Ms. Medders may interact with supervisors and co-workers on a "superficial basis" only and that Ms. Medders should have her own workstation with only "occasional, non-intensive contact with the general public." (*Id.*).

Ms. Medders argues that in giving partial weight to Dr. Nichols' opinion, the ALJ substituted his opinion for that of Dr. Nichols. (Doc. 11 at 24). Ms. Medders is correct that an ALJ may not substitute his own opinion of a claimant's condition for that of a medical expert. *See Freeman v. Schweiker,* 681 F.2d 727, 731-32 (11th Cir. 1982). Ms. Medders cites a number of cases that stand for this general proposition, but she advances no specific argument regarding how the ALJ did so in this case. (Doc. 11 at 24). Moreover, although an ALJ "may not make medical findings" himself, the ALJ's responsibility is "to resolve conflicting medical opinions." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016) (finding that "the ALJ did not usurp the role of a physician" by weighing the credibility of a medical expert's opinion "in light of other record evidence"). Accordingly, the court finds that in assigning partial weight to Dr. Nichols' opinion, the ALJ did not impermissibly substitute his opinion for that of a medical examiner.

Ms. Medders also argues that the court should find that the ALJ improperly evaluated Dr. Nichols' opinion based on the Seventh Circuit's "degree of suspicion" standard adopted in *Wilder v. Chater*, 64 F. 3d 335 (7th Cir. 1995). (Doc. 11 at 24–27). The Eleventh Circuit has not adopted this standard. Therefore, this court will not follow it either. But even if *Wilder* were controlling, *Wilder* is distinguishable from the facts of this case. In *Wilder*, the consulting physician's opinion was the only evidence of the claimant's impairments. *Wilder*, 64 F.3d at 337–38. Here, the record contains other evidence and opinions about Ms. Medders' mental limitations. Accordingly, *Wilder* does not assist Ms. Medders. *See Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019) (explaining that *Wilder* is inapposite where the ALJ does not reject the only medical evidence about a claimant's impairments).

  3. <u>Substantial Evidence Supports the ALJ's Finding that Ms. Medders Can Perform Her Past Relevant Work</u>

Ms. Medders' third argument is that substantial evidence does not support the ALJ's finding that she can return to her past relevant work as a day worker because "the ALJ did not consider all of the duties" of her "past work and evaluate" her "ability to perform those duties in spite of impairments." (Doc. 11 at 28). In support of this argument, Ms. Medders cites a number of cases that stand for the proposition that an ALJ must examine the physical requirements of a claimant's past work and evaluate a claimant's ability to perform that work in spite of any impairments. (*Id.*

at 28–30). But Ms. Medders' advances no specific argument about how the ALJ failed to fulfill that obligation in this case. (*See generally id.*). And Ms. Medders offers no other evidence or argument to satisfy her burden of establishing that she cannot perform her past work.

In any event, in this case, the ALJ proceeded to step five of the sequential analysis and found that other jobs exist in the national economy that Ms. Medders can perform. (R. at 28–29). And Ms. Medders does not challenge the ALJ's findings in that regard. (*See* Doc. 11 at 28–30). Therefore, even if the ALJ erred in determining that Ms. Medders can perform her past relevant work, an error is harmless because she has not established that she cannot perform the other jobs that the ALJ identified.

### III.   CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Medders' application for a period of disability and disability insurance benefits. Therefore, the court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this June 15, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE